UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER G.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 3:17-cv-05798-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits and supplemental security income benefits pursuant to sentence four of 42 U.S.C. § 405(g) (sentence four) and for remand pursuant to sentence six of 42 U.S.C. § 405(g) (sentence six). The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure ("FRCP") 73; Local Rule MJR 13. For the reasons set forth below, the Court denies plaintiff's request for remand pursuant to sentence six, but reverses and remands defendant's decision to deny benefits for further administrative proceedings pursuant to sentence four.

ORDER - 1

# FACTUAL AND PROCEDURAL HISTORY

On July 30, 2014, plaintiff filed applications for disability insurance benefits and supplemental security income benefits alleging that she became disabled beginning July 1, 2012. Dkt. 10 Administrative Record (AR) 272-80. The claim was denied on initial administrative review and on reconsideration (AR 186-211) and on April 29, 2016, ALJ Marilyn S. Mauer conducted a hearing on plaintiff's appeal. AR 86-123.

In a written decision dated June 13, 2016, the ALJ determined plaintiff was not disabled. AR 15-45. At the first step, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). At the second step, the ALJ considers "the severity of the claimant's impairments. *Id.* If the evaluation process "continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the ALJ considers the claimant's residual functional capacity ("RFC") "in determining whether the claimant can still do past relevant work" at step four, "or make an adjustment to other work" at step five. *Id.*

In this case, step one was resolved in plaintiff's favor. AR 20. At step two, the ALJ found plaintiff had the following severe impairments: bilateral knee replacements, asthma, generalized anxiety disorder (GAD), and depression. AR 20. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 21. The ALJ then considered plaintiff's residual functional capacity (RFC) and found at step four that she could not perform her past relevant

work, but that she could perform other jobs that exist in significant numbers in the national economy at step five, and therefore she was not disabled. AR 23-39.

Plaintiff filed an appeal with the Appeals Council and submitted additional evidence from Sea Mar Lacey Medical (records from May to July 2016). AR 3, 46-78. The Appeals Council affirmed, because there was not a reasonable probability that the new evidence would change the outcome of the ALJ's decision. AR 3, 46-78. Plaintiff also submitted treatment records from Jared Cornelison, a certified physician's assistant (PA-C) from November 7, 2016.[1] AR 3. The Appeals Council rejected this evidence as irrelevant and immaterial because it did not relate to the period at issue, and did not affect the ALJ's decision regarding whether plaintiff was disabled beginning on or before June 13, 2016. AR 3, 12-14.

Plaintiff then appealed to this Court. AR 1-8, 268-69; Dkt. 1. Plaintiff argues she is entitled to relief under sentence six based on new evidence obtained after the ALJ issued her decision. Dkt. 12. Plaintiff asks the court to reverse the ALJ's decision and remand for further administrative proceedings pursuant to sentence four, arguing: (1) the ALJ erred in evaluating the medical opinion evidence; (2) the ALJ erred in evaluating plaintiff's testimony; and (3) the ALJ erred in in evaluating plaintiff's RFC. Dkt. 12.

The Court denies plaintiff's request for remand pursuant to sentence six, but agrees the ALJ erred with respect to the evaluation of the medical opinion evidence and plaintiff's testimony requiring reversal and remand for further administrative proceedings pursuant to sentence four.

---

[1] The Appeals Council refers to November 9, 2016 as the date of Mr. Cornelison's treatment records. AR 3. However, the treatment notes are dated November 7, 2016. AR 12-14.

ORDER - 3

LEGAL STANDARD

Section 405(g) of Title 42 of the United States Code "authorizes district courts to review administrative decisions in Social Security benefit cases." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Sentences four and six of Section 405(g) "set forth the exclusive methods by which district courts may remand [a case] to the Commissioner." *Id.* "The fourth sentence of § 405(g) authorizes a court to enter a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (internal quotations omitted); *see also Akopyan*, 296 F.3d at 854 (sentence four remand is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits").

A sentence six remand, on the other hand, "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854. Thus, section 405(g) authorizes two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence six remand). *Faucher v. H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994); *Melkonyan*, 501 U.S. at 98.

DISCUSSION

I.  Plaintiff's Request for Remand Concerning PA-C Cornelison Opinions, And Request Pursuant to Sentence Six

Plaintiff argues that evidence from PA-C Cornelison relates to plaintiff's condition prior to the date of the ALJ's decision. Yet Mr. Cornelison's treatment notes are not retrospective. Mr. Cornelison noted, in November 2016, that plaintiff reported pain and a bump in her wrist for the

past 11 months. But Mr. Cornelison did not state an opinion about plaintiff's impairments or limitations prior to November 2016. AR 12-14. The Court therefore finds that there is no basis for remand.

Plaintiff requests that the Court remand this matter pursuant to sentence six. .[2] AR 3, 12-14. Plaintiff is not considering the procedural posture of this case. In one section of her Opening Brief, plaintiff argues that the Appeals Council did not incorporate the new evidence submitted to the Appeals Council into the record. Dkt. 12 at 7. Yet in another section of her Opening Brief and also in her Reply Brief, she argues that the administrative record includes the new evidence and the Court should remand pursuant to sentence four. Dkt. 12 at 9, Dkt. 14 at 6 (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)).

Although the Appeals Council decision is not entirely clear, and does not explicitly state whether Mr. Cornelison's opinion was considered and exhibited(*see* AR 3), "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); s*ee also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) ("[s]entence-six remands may be ordered in only two situations: where the Secretary requests a

---

[2] Plaintiff also submitted medical records from Sea Mar Lacey Medical to the Appeals Council. AR 46-78. In her Opening Brief, plaintiff only challenges the new evidence related to Mr. Cornelison from November 7, 2016, and while she cites to the Sea Mar Lacey Medical records in a cursory manner, she makes no argument demonstrating how the Sea Mar Lacey records support remand. Dkt. 12 at 7-9. In her Reply Brief, plaintiff argues the Sea Mar Lacey Medical records support remand. Dkt. 14. However, plaintiff has waived this argument. *See Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first time in their reply briefs") (citing *U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853 (1971)); *U.S. v. Levy*, 391 F.3d 1327, 1335 (11th Cir. 2004) ("raise the issue in your initial brief or risk procedural bar"). Moreover, defendant has been denied any opportunity to respond to this argument raised for the first time in plaintiff's Reply Brief. *See* Dkts. 12, 13, 14. Therefore, the Court declines to consider the Sea Mar Lacey Medical records on appeal.

remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented *before the agency*") (emphasis added) (citing 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

This Court may only review final agency actions, and the ALJ's decision—rather than the Appeals Council's decision to decline review—is a final agency action. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (*citing Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008)); 20 C.F.R. §§ 404.981, 416.1481. And the Court must also review an ALJ's decision to determine whether the decision is supported by substantial evidence in the administrative record; "the administrative record includes evidence submitted to and *considered* by the Appeals Council." *Brewes*, 682 F.3d at 1162 (emphasis added). Mr. Cornelison's opinion is properly before the Court, and the Court may consider it under sentence four when determining whether the ALJ's decision was supported by substantial evidence in the record as a whole. *See Brewes*, 682 F.3d at 1163.

In the November 7, 2016 evaluation, PA-C Cornelison found that plaintiff exhibited signs and symptoms of right wrist pain, volar ganglion cyst and carpal tunnel syndrome. AR 12-14. He noted plaintiff reported having shooting pain and a bump in her wrist for the past 11 months. AR 13. With respect to the step two finding, the ALJ found that although plaintiff had some limitations in her range of motion in June 2014 with pronation of the bilateral forearms and ulnar movement on the right wrist, there was no diagnosis related to plaintiff's hand limitations in the treatment record. AR 21 (citing AR 481).

Plaintiff's arguments regarding the later submitted evidence are not supported by the record. Mr. Cornelison's treatment records are not relevant or material as to plaintiff's condition when the ALJ issued her June 2016 decision. Although plaintiff argues this evidence relates to

ORDER - 6

plaintiff's condition prior to the date of the ALJ's decision, Mr. Cornelison's treatment notes are not retrospective. While Mr. Cornelison noted that plaintiff reported pain and a bump in her wrist for the past 11 months, Mr. Cornelison did not state an opinion about plaintiff's impairments or limitations prior to November 2016. AR 12-14. At best, Mr. Cornelison's treatment records indicate that plaintiff's symptoms worsened after the ALJ's decision, but as the Appeals Council stated, plaintiff would be required to file a new claim for benefits in order to introduce this evidence. *See* AR 3, 20 C.F.R. § 404.970(b).

Mr. Cornelison's treatment records would not change the ALJ's ultimate disability determination. The mere fact that plaintiff sought treatment and reported a history of pain and a cyst, is not enough to establish the existence of work related limitations or disability. Mr. Cornelison's treatment records do not indicate plaintiff is more severely limited than found by the ALJ. *See Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of symptoms or impairment is insufficient proof of disability).

Accordingly, Mr. Cornelison's treatment records do not undercut the ALJ's reasoning. The Court declines to reverse or remand the ALJ's decision based on Mr. Cornelison's treatment records.

II. <u>Plaintiff's Request for Remand Pursuant to Sentence Four</u>

Plaintiff also seeks remand pursuant to sentence four. Dkt. 12. In a sentence four remand, the Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This

requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

A. <u>The ALJ's Evaluation of the Medical Opinion Evidence</u>

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester,* 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149. An ALJ need not accept the opinion of a treating physician, "if

ORDER - 8

that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

On a form dated June 25, 2013 (the June 25, 2013 opinion)., a provider from Olympic Orthopedic Associates stated plaintiff had been under their care for her left knee replacement and

opined that plaintiff was "not able to work at any job requiring standing or walking permanently." AR 385 (emphasis in the original). The provider's signature on the form is not legible. AR 385. The ALJ listed the June 25, 2013 opinion as a "treating source statement". *See* AR 44.

The ALJ gave the June 25, 2013 opinion little weight for four reasons. First, the ALJ found the "treating relationship and credentials of the person providing this opinion are unknown." AR 33. Second, the ALJ reasoned the form was "incomplete and does not provide a function-by-function assessment of what the claimant remained capable of doing despite her impairments." AR 33. Third, the ALJ found the provider indicated the limitations were due to plaintiff's left knee problems, but the June 25, 2013 opinion predated plaintiff's left knee total arthroplasty which occurred on August 26, 2013 (and plaintiff reported she had done well after that surgery), as well as plaintiff's right knee total arthroplasty and revision. AR 33. Lastly, the ALJ reasoned the statement was "a conclusory assertion [that] the claimant is disabled." AR 33.

1. *Unknown Provider*

The ALJ rejected the June 25, 2013 opinion because the provider's signature was not legible. AR 33. Plaintiff argues the ALJ should have inferred the provider was associated with the treating clinic, Olympia Orthopedic Associates, and that the first letter of the signature appears to be a "B" and the second letter an "r," which are the first two letters of "Brodie." Dkt. 12 at 5 (citing AR 385). Therefore, plaintiff argues, the ALJ should have inferred that the opinion was from treating physician, Dr. P. Brodie Wood, M.D. *See id.* Moreover, plaintiff argues if the signature was not clear, the ALJ should have re-contacted Olympia Orthopedic Associates to determine if it was from their clinic and whether the form was from Dr. Wood.

1  Dkt. 12 at 5. Defendant argues that advocating for the one particular inference plaintiff attempts
2  to draw from the record is insufficient to justify reversing the ALJ's decision. Dkt. 13 at 3.

3  The ALJ's finding that the June 25, 2013 opinion was from a "treating source," AR 44, but that the provider's signature was not legible, AR 33, should have triggered the ALJ's duty to clarify those ambiguities. SSR 96–5p, 1996 SSR LEXIS 2 at *6 (for "treating sources, the rules also require that [the Social Security Administration make] every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."); *See also Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.' ") (quoting *Smolen,* 80 F.3d at 1288); *Benton v. Barnhart,* 331 F.3d 1030, 1039 (9th Cir. 2003) ("If the ALJ was not sure as to Dr. Zwiefach's background, he had the opportunity and duty to develop the record.").

Therefore, in this case, where the provider's signature on the June 25, 2013 opinion was not legible, the ALJ should have taken steps to ensure the record was fully developed. At the very least, obtaining the name of the provider would ensure a complete record, and that the ALJ was giving appropriate weight to the other medical opinion and objective evidence. Accordingly, the Court concludes that the ALJ erred by failing to develop the record regarding the June 25, 2013 opinion.

2. *Incomplete form*

The ALJ reasoned the June 25, 2013 opinion form was incomplete and did not provide "a function-by-function assessment of what the claimant remained capable of doing despite her impairments." AR 33. Since the ALJ asserted that the provider's signature on the June 25, 2013

opinion was not legible – and, as explained herein, the ALJ should have taken steps to ensure that the record was fully developed – clarification of these issues is needed to determine whether the ALJ's finding regarding incompleteness and lack of function-by-function assessment is supported by substantial evidence. *See* AR 33. For example, determining the provider's name may reveal additional information as to the treating relationship or length of contact and whether the provider's opinion is supported by treatment notes or other clinical findings. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 ("the ALJ was [not] entitled to reject [medical] opinions on the ground that they were reflected in mere check-box forms" where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015). As such, the Court declines to consider this to be a proper reason for rejecting the June 25, 2013 opinion at this time.

        3.     *Plaintiff's left knee surgeries*

Third, the ALJ reasoned the June 25, 2013 opinion indicated the limitations were due to plaintiff's left knee problems, but the opinion was rendered a few months before plaintiff's left knee surgery. AR 33. Specifically, the ALJ notes that the June 25, 2013 opinion indicates plaintiff had left knee total arthroplasty on August 26, 2013, and plaintiff reported doing well after surgery. AR 33 (citing AR 393-94, 400, 403, 406-07). In addition, the ALJ found that the June 25, 2013 opinion predated plaintiff's right knee total arthroplasty and revision. AR 33 (citing AR 479-84, 601).

A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). However, under the circumstances in this case, the ALJ erred in

concluding that the June 25, 2013 opinion, rendered before plaintiff's knee surgeries, was inconsistent with the record as a whole regarding plaintiff's functional capacity.

While plaintiff reported some improvement after her left knee arthroplasty surgery, *see* AR 400-01, 404, 407, 438, the ALJ failed to discuss other occasions where plaintiff reported knee pain and limitations, including after both her left knee and right knee surgeries. For example, in November 2013, plaintiff reported falling on her left knee causing pain, a gait problem, swelling, decreased range of motion, and tenderness. *See* AR 441-42. In December 2013, plaintiff reported her knees were hurting intermittently with activity and pain which limited her activity. AR 403, 435. In June and July of 2014, plaintiff complained of bilateral leg and hip pain that was worse with bending, walking, standing and prolonged siting. AR 428, 588. After plaintiff's right knee arthroplasty surgery in August 2014, plaintiff continued to report knee pain, intermittent swelling, and instability. AR 543, 553, 608. In May 2015, plaintiff had a revision right knee arthroplasty surgery. AR 601.

Thus, the treatment notes reflect that plaintiff reported knee pain and limitations after her knee surgeries, and it is not inconsistent with disability that plaintiff be entirely incapacitated by her symptoms at all times. *See Trevizo,* 871 F.3d at 680 (citing *Lester*, 81 F.3d at 833). The ALJ offered no analysis to reconcile this evidence showing symptoms after plaintiff's knee surgery despite some improvement, and the ALJ "may not reject 'significant probative evidence' without explanation … and must state reasons for disregarding [such] evidence." *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395).

Here, "[the ALJ] merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any specific medical opinions and findings he rejects. This approach is inadequate." *Embrey,* 849 F.2d at 422.

Plaintiff may have had successful knee surgeries, or reports of doing well after her knee surgeries to some extent, but that is not necessarily inconsistent with the June 25, 2013 opinion that plaintiff would not be able to work in a job that required standing or walking. The mere fact that plaintiff had several knee surgeries after the June 25, 2013 opinion does not demonstrate that the opinion fails to properly describe plaintiff's long-term functioning. It is entirely possible that limitations after knee surgery would continue to restrict plaintiff's ability to work at a job that required standing or walking. *See e.g. Woodring v. Colvin,* 2013 WL 6712635, at *3 (D. Or. Dec. 18, 2013) (holding that successful neck surgery was not inconsistent with physician's opinion that limitations after the neck surgery would continue to limit the plaintiff's ability to perform work activities). Therefore, the ALJ erred in finding that the June 25, 2013 opinion was inconsistent with plaintiff's subsequent knee surgeries.

    4. *Conclusory assertion*

Lastly, the ALJ reasoned the June 25, 2013 opinion was "essentially a conclusory assertion [that] the claimant is disabled." AR 33 (citing 20 C.F.R. §§ 404.1527 and 416.927; SSR 95-p). However, the portion of the opinion where the provider opined plaintiff was not able to work at any job that required standing or walking, was not the same type of "administrative finding that [is] dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d)(1). Rather, it was an opinion on the severity of plaintiff's impairments and the impact on her daily activities. *See id.* Therefore, this is not a valid reason to reject the June 25, 2013 opinion.

    5. *Harmless error*

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

ORDER - 14

claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In the RFC assessment, the ALJ found, in relevant part, that plaintiff is capable of standing and/or walking for a total of two hours in an eight-hour workday, sitting for 60 minutes at a time and can resume sitting after a break of no more than five minutes. AR 23. Had the ALJ credited fully the June 25, 2013 opinion, the RFC would have included additional limitations in plaintiff's ability to work at a job that required standing or walking. The ALJ's error with respect to the June 25, 2013 opinion is not harmless and requires reversal. *Stout*, 454 F.3d at 1055 (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination).

### B. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ erred in evaluating her testimony related to bilateral knee pain and dysfunction and the need to take daily naps.[3] Dkt. 12 at 11.

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based

---

[3] The Court notes plaintiff also argues that her testimony that she has a limited range of motion in her right hand and wrist was erroneously rejected in light of Mr. Cornelison's treatment records. Dkt. 12 at 10. However, the Court finds this not a separate basis for remand pursuant to sentence four, but rather, plaintiff is again arguing that the new evidence incorporated into the record by the Appeals Council undercuts the ALJ's reasoning. *See* Dkt. 12 at 10 (arguing the ALJ erred in finding that the record contained no diagnosis or treatment of any upper extremity complaint) (citing AR 21). This argument has been addressed above, *see supra* section I, with respect to plaintiff's request for remand pursuant to sentence six.

on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Plaintiff testified she has pain, instability, grinding, and popping in her knees despite numerous surgeries. AR 104-105. Plaintiff testified she has degenerative joint disease in her hips, her hips pop and she suffers from restless leg syndrome which causes her legs to feel like "little pin needles are being poked into my feet." AR 106-07. Plaintiff testified she takes naps daily. AR 102, 115. In her function report, plaintiff stated she is able to sit for a maximum of 10 minutes, stand for a maximum of 10 minutes, and walk for a maximum of 10 minutes. AR 291, 296. Plaintiff reported she has to change her position every 10 to 15 minutes. AR 291-92, 296. Plaintiff reported she uses a cane every day. AR 297. With respect to these allegations regarding

plaintiff's physical impairments, the ALJ rejected this subjective symptom testimony, finding it was inconsistent with the objective medical evidence. AR 24.

Plaintiff contends the ALJ failed to provide a reason to reject plaintiff's testimony regarding her need to take daily naps, and plaintiff's knee pain and dysfunction were supported by the findings and opinion evidence of the Olympia Orthopedic Associates and Dr. Wood. Dkt. 12 at 11. In essence, plaintiff only challenges the ALJ's finding that the objective medical evidence was inconsistent with plaintiff's testimony of knee pain and dysfunction and the need to take daily naps. *See id.* Defendant argues plaintiff failed to rebut the remaining reasons provided by the ALJ for rejecting plaintiff's subjective symptom testimony regarding her mental impairments, that she failed to seek treatment, that plaintiff's reported improvement with treatment, and that her testimony was inconsistent with the objective medical evidence, specifically, her normal mental status examinations. Dkt. 13 at 8-9; AR 29.

However, because plaintiff is not challenging the ALJ's rejection of her testimony related to her mental impairments, the ALJ's proffered reasons for rejecting such testimony are irrelevant to the ALJ's assessment of plaintiff's testimony related to her physical impairments. Although the ALJ adduced a number of other reasons for not fully crediting plaintiff's testimony regarding her mental impairments, upon review of the record, this Court concludes that the only reason given for discrediting plaintiff's testimony regarding her physical impairments a lack of objective medical evidence. *See* AR 24-29.

Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of

ORDER - 17

1 pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

The only reason the ALJ provided for rejecting plaintiff's testimony regarding the intensity, persistence, and limiting effects of her physical impairments was that such testimony was not supported by objective medical evidence. Therefore, the ALJ erred in rejecting plaintiff's testimony regarding the intensity, persistence, and limiting effects of her knee pain and dysfunction. Moreover, even if the Court were to consider the proffered reasons for rejecting plaintiff's mental impairments, all of these relate to the objective medical evidence. *See* AR 29.

Plaintiff testified to greater limitations than the limitations included in the RFC determination. Plaintiff reported she is able to sit for a maximum of 10 minutes, stand for a maximum of 10 minutes, and walk for a maximum of 10 minutes. AR 291, 296. The ALJ determined that plaintiff has the RFC to perform light work, plaintiff can sit for 60 minutes at a time and can resume sitting after a break of no more than five minutes. AR 23. If the ALJ properly considers plaintiff's subjective symptom testimony, it would follow that the ALJ may include additional limitations in the RFC. The ALJ's error with respect to plaintiff's credibility thus is not harmless and requires reversal. *Stout*, 454 F.3d at 1055 (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination).

        C.      <u>The ALJ's Evaluation of Plaintiff's RFC</u>

Plaintiff argues that given the purported errors in the ALJ's analysis of the medical opinion evidence, the ALJ's RFC was not supported by substantial evidence. Dkt. 12 at 12. Because the Court already has concluded that the ALJ erred in reviewing the June 25, 2013

opinion and plaintiff's subjective symptom testimony and that this matter should be reversed and remanded for further consideration, *see supra*, sections II.A. and II.B., the remainder of the sequential disability evaluation process, including step five, will need to be assessed anew on remand.

III.     Remand for Further Proceedings

Plaintiff seeks remand for further administrative proceedings. Dkt. 12 at 1-2. As discussed above, the ALJ failed to provide legally sufficient reasons for discounting, and failed to clarify the ambiguities, concerning the June 25, 2013 medical opinion from Olympia Orthopedic Associates (on which the signature was unclear) (AR 33, 385) and also erred by failing to provide legally sufficient reasons to discount plaintiff's subjective symptom testimony. Accordingly, the Court remands for further administrative proceedings. Specifically, on remand the Commissioner shall clarify the ambiguities and re-evaluate the June 25, 2013 opinion, as well as re-evaluate plaintiff's subjective symptom testimony.

## CONCLUSION

Based on the foregoing discussion, the Court denies plaintiff's request for remand pursuant to sentence six. However, the Court reverses this case under sentence four and remands for further administrative proceedings.

Dated this 30th day of November, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge